IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CT-3262-FL

| | | |
|---|---|---|
| JESSE THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DAVID HARTSFIELD, DAVID SCOTT, | ) | |
| CYNTHIA JENKINS PITTMAN, | ) | |
| MICHAEL COLLINS, SEAN DILLARD, | ) | |
| MONICA BOND, and JAMES VAUGHN, | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 30). Plaintiff did not respond to the motion and in this posture the issues raised are ripe for ruling. For the reasons that follow, the court grants the motion.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on November 14, 2017, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants David Hartsfield ("Hartsfield"), David Scott ("Scott"), Cynthia Jenkins Pittman ("Jenkins-Pittman"), Michael Collins ("Collins"), Sean Dillard ("Dillard"), Monica Bond ("Bond"), and James Vaughn ("Vaughn") violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution by instituting and prosecuting false

---

[1]  The court dismissed formerly named defendant Reginald Mewborn by separate order entered June 13, 2018.

disciplinary charges against him. Plaintiff seeks compensatory and punitive damages, and injunctive relief directing defendants to expunge the disciplinary conviction and transfer him to a lower custody correctional facility.

On June 13, 2018, the court conducted its frivolity review of the complaint and allowed the action to proceed. Defendants filed answer on October 2, 2018. The following day, the court entered initial order regarding planning and scheduling, and appointed North Carolina Prisoner Legal Services, Inc. ("NCPLS") to assist plaintiff in discovery. On October 25, 2018, the court entered final case management order governing discovery and dispositive motions practice. The parties completed discovery on or about June 4, 2019. That same day, the court granted NCPLS's motion to withdraw from representing plaintiff in this action.

On November 6, 2019, defendants filed the instant motion for summary judgment. In support, defendants rely upon memorandum of law, statement of material facts, and appendix of exhibits thereto, comprising the following: 1) declaration of defendant Hartsfield; 2) video footage taken on March 21, 2017 ("Hartsfield Decl. Ex. A"); 3) North Carolina Department of Public Safety ("NCDPS") offender public information regarding plaintiff ("Hartsfield Decl. Ex. B"); 4) official records of plaintiff's disciplinary infractions ("Hartsfield Decl. Ex. C"); 5) declaration of defendant Dillard; 6) NCDPS Inmate Disciplinary Procedures Policy ("Dillard Decl. Ex. A"); 7) incident report ("Dillard Decl. Ex. B"); and 8) disciplinary report and related disciplinary records ("Dillard Decl. Ex. C"). Plaintiff did not respond to the motion.

## STATEMENT OF THE FACTS

The undisputed facts may be summarized as follows.[2] Plaintiff is an inmate in NCDPS

---

[2] As noted, plaintiff did not respond to defendants' motion for summary judgment or file verified complaint in this action. The court therefore draws the factual background from defendants' undisputed submissions.

custody, who was housed at the Caledonia Correctional Institution ("Caledonia C.I.") during the relevant time period. (Defs' SOMF (DE 32) ¶ 1; Dillard Decl. (DE 33-5) ¶ 4). Defendant Dillard was the disciplinary hearing officer assigned to plaintiff's disciplinary proceedings, and defendant Hartsfield was a correctional officer at the Caledonia C.I. during the relevant time period. (Defs' SOMF (DE 32) ¶¶ 5-6).

On March 21, 2017, correctional staff observed a vehicle pull onto the Caledonia C.I. parking lot, stop for a few minutes near a dumpster, and then drive away. (Defs' SOMF (DE 32) ¶ 7; Dillard Decl. (DE 33-5) ¶ 6). After the vehicle left, correctional staff searched the dumpster and discovered garbage bags containing contraband, including cell phones, cigarettes, tobacco, lighters, rolling papers, a box of "Just for Men" hair color, marijuana, and cocaine. (Defs' SOMF (DE 32) ¶ 8; Dillard Decl. (DE 33-5) ¶ 6).

The following morning, defendant Hartsfield observed plaintiff approach the dumpster, deposit a garbage bag therein, and search the dumpster and surrounding area. (Defs' SOMF (DE 32) ¶ 9; Hartsfield Decl. (DE 33-1) ¶¶ 4-15). Plaintiff's behavior was captured on a video recording. (Defs' SOMF (DE 32) ¶ 11; Hartsfield Decl. Ex. A (DE 33-2)). Plaintiff was not authorized to be in the area where the dumpsters were located, and he was the first inmate to search the dumpster after the contraband was deposited. (See Defs' SOMF (DE 32) ¶ 14; Hartsfield Decl. (DE 33-1) ¶¶ 2-14).

Based on the foregoing events, plaintiff was charged with attempting to manufacture, possess, introduce, sell or use any unauthorized controlled substance, unauthorized intoxicant or alcoholic beverage, or possess associated paraphernalia, and attempt to possess or use any type of recording device or communication device, including a cell phone, in violation of NCDPS

3

Disciplinary Rules A99, A12, and A16. (Defs' SOMF (DE 32) ¶ 23; Dillard Decl. Exs. A and C (DE 33-6, 33-8)). Plaintiff also was charged with attempting to possess any tobacco products, paraphernalia, or unauthorized lighters, in violation of NCDPS Disciplinary Rules B99 and B19. (Defs' SOMF (DE 32) ¶ 23; Dillard Decl. Exs. A and C (DE 33-6, 33-8)).

On April 9, 2017, plaintiff signed a notice of rights document explaining his rights to 24 hours advance written notice of the charges, to have evidence gathered on his behalf, to present evidence or witness testimony, and to staff member assistance at the hearing. (Dillard Decl. Ex. C (DE 33-8) at 27).[3] On April 12, 2017, defendant Dillard reviewed the disciplinary package and ordered reinvestigation to obtain more specific information about the contraband. (Defs' SOMF (DE 32) ¶ 22; Dillard Decl. Ex. C (DE 33-8)).

Defendant Dillard convened the disciplinary hearing on April 27, 2017. (Dillard Decl. Ex. C (DE 33-8) at 11). Defendant Dillard informed plaintiff of the charges, his rights during the disciplinary hearing, and his appellate rights. (Id. at 11). Plaintiff pleaded not guilty, waived his right to 24 hours written notice of the charges, and did not request live witnesses or staff assistance. (Id. at 11, 13). Defendant Dillard considered plaintiff's written statement and testimony during the hearing, the video surveillance evidence, the reporting party's statement, the investigating officer's report, and statements of third-party witnesses. (Id. at 11-12). At the conclusion of the hearing, defendant Dillard found plaintiff guilty of the disciplinary offenses described above. (Id. at 12). Plaintiff was provided a written record of the hearing describing the evidence defendant Dillard relied on to convict plaintiff, appeal form, and copy of the punishments imposed. (Id.).

---

[3] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

Plaintiff was punished as follows for the A99 conviction: 1) 60 days segregation; 2) 40 days loss of good time credits; 3) 50 hours extra duty; 4) 180 days suspension of privileges; and 5) six months limited draw. (Id. at 9-10). For the B99 conviction, plaintiff received: 1) 30 days loss of good time credits; 2) 40 hours extra duty; and 3) 120 days suspension of privileges. (Id.). Defendant Bond, an NCDPS administrator, upheld plaintiff's punishment on appeal. (Id. at 1, 58).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself]

5

to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.  Analysis

Plaintiff alleges defendants violated his rights under the Fourteenth Amendment's Due Process Clause[4] by conducting a "biased and prejudiced" disciplinary hearing and convicting him of attempting to introduce contraband into his correctional facility despite video evidence showing

---

4   Plaintiff also asserts defendants violated his rights under the Eighth Amendment to the United States Constitution. As discussed herein, plaintiff's challenges to his disciplinary proceeding are analyzed under the Fourteenth Amendment. Plaintiff's complaint fails to allege a violation of plaintiff's Eighth Amendment rights. See Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008); Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993).

his innocence. (Compl. (DE 1) ¶¶ 17, 41-42). Plaintiff further alleges that defendant Hartsfield violated his due process rights by changing his statement about the incident, and that defendants Hartsfield, Scott, Collins, Vaughn and Jenkins-Pittman selectively prosecuted him. (Id. ¶¶ 40, 43).

Defendants assert the defense of qualified immunity as to plaintiff's claims for monetary damages. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when: 1) the plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 538 (4th Cir. 2017).

The court first considers whether plaintiff has established a constitutional violation. The Due Process Clause of the Fourteenth Amendment mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules with the loss of a protected liberty interest. Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974). Under the Wolff standard, an inmate is entitled to the following: 1) written notice of the charges at least 24 hours in advance of the hearing; 2) a written statement by the fact finders as to the evidence relied on and reasons for disciplinary action; and 3) the right to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Id. at 564-66; see also Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019).

Decisions by a disciplinary board pass scrutiny under the Due Process Clause if there is

7

some evidence in the record to support the conclusions. Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). Federal courts will not review the accuracy of the board's fact finding de novo or for clear error, and determining whether the standard is satisfied does not require examination of the entire record or weighing of evidence. See Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990). Rather, "[a]s long as the record is 'not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary,' courts need not grant . . . relief on this ground." Tyler v. Hooks, 945 F.3d 159, 170 (4th Cir. 2019) (quoting Hill, 472 U.S. at 457). Finally, the disciplinary decision must be made by an impartial adjudicator. Wolff, 418 U.S. at 570-71.

As a threshold issue, defendants argue that Wolff and its progeny do not apply where plaintiff has failed to submit competent summary judgment evidence[5] that he was deprived of a protected liberty interest. A prisoner is entitled to procedural due process protections in a prison disciplinary proceeding if the punishment either alters "the duration of an inmate's sentence," or causes an "atypical and significant hardship on the inmate[] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 487 (1995); see Henderson v. Simms, 223 F.3d 267, 274 (4th Cir. 2000). Although plaintiff was punished by removal of 70 days of good time credit, (see Dillard Decl. Ex. C (DE 33-8) at 9-10), the removal of good time credit does not affect the duration of plaintiff's life sentence.[6] See Waddell v. Dep't of Corr., 680 F.3d 384, 394-95

---

[5] Plaintiff's unverified complaint is not competent summary judgment evidence. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). The court previously notified plaintiff that his response to the motion for summary judgment must include verified evidence such as affidavits, declarations, or similar admissible evidence. (Roseboro Notice (DE 34)).

[6] Plaintiff alleges that his disciplinary conviction may affect his parole eligibility. Plaintiff, however, was recently granted conditional parole release, and the disciplinary conviction did not impact the Parole Commission's decision. (Defs. SOMF (DE 32) ¶¶ 28-30); see also Local Civil Rule 56.1(a)(2) ("Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion [for summary

8

(4th Cir. 2012). Plaintiff also fails to submit verified evidence establishing he was subject to an atypical and significant hardship in relation to the ordinary incidents of prison life. Accordingly, plaintiff has failed to establish he was deprived of a protected liberty interest.

Even assuming plaintiff established deprivation of a protected liberty interest, defendants have satisfied their burden of showing the absence of a genuine dispute of fact with respect to the alleged due process violations. With the exception of the video surveillance evidence, discussed below, the undisputed evidence demonstrates plaintiff was provided (or knowingly waived) all the procedural safeguards mandated by Wolff. (See Dillard Decl. Ex. C (DE 33-8) at 9-13, 27). Plaintiff also does not contest defendants' evidence that the disciplinary proceedings were conducted by an impartial adjudicator, or that the findings were support by some evidence in the record. (See Dillard Decl. (DE 33-5) ¶¶ 5, 8; Dillard Decl. Ex. A (DE 33-6) § 0205(j)(2); Hartsfield Decl. (DE 33-1) ¶¶ 3-14 (describing evidence against plaintiff); Hartsfield Decl. Ex. A (DE 33-2) (video recording of incident)).

Plaintiff's principal allegation is defendants failed to review video evidence showing he did not commit the alleged disciplinary infractions.[7] The United States Court of Appeals for the Fourth Circuit has held that inmates enjoy a "qualified right of access" to video evidence during inmate disciplinary proceedings when a protected liberty interest is at stake. Lennear, 937 F.3d at 270. However, failure to comply with this requirement is subject to harmless error review, which in this context requires determining whether the "excluded evidence could have 'aided' the

---

judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.").

[7] As discussed above, plaintiff failed to submit any competent evidence supporting his remaining allegations that he was selectively prosecuted, that defendant Hartfield unfairly changed his witness statement, and that the disciplinary proceeding was biased and prejudiced.

9

inmate's defense." Id. at 277 (quoting Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006)).

Having reviewed the video, and in the absence of any verified evidence or argument from plaintiff regarding this issue, the court finds the alleged failure to disclose the video evidence was harmless. The recording clearly shows plaintiff (and only plaintiff) searching the area where the contraband was deposited. When considered in conjunction with defendant Hartsfield's undisputed testimony that plaintiff was not authorized to be near the dumpster at the time, and that plaintiff was the first person to search the dumpster following delivery of the contraband, the video evidence would not have aided plaintiff's defense. See id. at 277 (stating district court may review the video evidence to determine whether failure to disclose the evidence is harmless).

Furthermore, with respect to plaintiff's claims for monetary damages, defendants are entitled to qualified immunity because the right to view the video evidence was not clearly established at the time of the alleged misconduct in March 2017. Lennear was decided on August 23, 2019, and established "for the first time in this circuit that inmates . . . have a qualified right to obtain and compel consideration of video surveillance evidence" in a prison disciplinary proceeding where a liberty interest is in issue. Id. at 273-74; see also Tyler, 945 F.3d at 169 (holding that Lennear applied Wolff in a new context and thus did not represent a statement of "clearly established Federal law" for purposes of habeas review under 28 U.S.C. § 2254). Additionally, prior to Lennear, "courts across the country had found no violation of prisoners' due process rights [by failing to disclose video evidence in a prison disciplinary proceeding]." Tyler, 945 F.3d at 169; see also Young v. Lynch, 846 F.2d 960, 963-64 (4th Cir. 1988) (rejecting argument that due process "requires production of real evidence in every disciplinary hearing" even where the evidence would have been dispositive). Thus, defendants were not placed on

10

notice that the right alleged by plaintiff was clearly established by binding Supreme Court or Fourth Circuit precedent, the North Carolina Supreme Court, or a "consensus of cases of persuasive authority." Booker, 855 F.3d at 539.

In summary, defendants are entitled to judgment as a matter of law where the undisputed record evidence fails to establish a constitutional violation. Furthermore, with respect to plaintiff's claims for monetary damages, defendants are entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (DE 30) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 25th day of September, 2020.

*/s/ Louise W. Flanagan*
LOUISE W. FLANAGAN
United States District Judge

11

Case 5:17-ct-03262-FL   Document 42   Filed 09/24/20   Page 11 of 11